Cheryl Ann CHAPMAN, Plaintiff,

v.

MAZDA MOTOR OF AMERICA, INC.,
and Mazda Motor Corporation,
Defendants.

No. CV 96–58–BU–DWM.

United States District Court,
D. Montana,
Butte Division.

June 11, 1998.

Robert Cameron, Gregory O. Morgan, PC, Bozeman, MT, David R. Paoli, Paoli Law Office, Missoula, MT, for Cheryl Ann Chapman, Plaintiff.

Brad H. Anderson, Moulton, Bellingham, Longo & Mather, PC, Billings, MT, for Mazda Motor of America, Inc., Defendant.

## OPINION AND ORDER

MOLLOY, District Judge.

### I. Background

Trial in this case is set for August 31, 1998, in Butte. Mazda filed four Motions in Limine that Chapman resists. The motions are granted, denied, or reserved as set forth below.

Chapman sues for injuries sustained in a one-vehicle accident that rendered her paraplegic. She claims the Mazda vehicle she was driving is not crashworthy in its roof structure, and that the seat belt she was wearing failed to restrain her due to the failure of the seat belt retractor locking mechanism. Chapman seeks recovery on theories of negligence and strict liability.

### II. Discussion

#### A. Medical Expenses

Mazda argues that Chapman is not entitled to prove or recover medical expenses not paid by Medicaid because the health care provider cannot be reimbursed for them. The legal position is that Chapman did not incur bills and cannot recover that for which she is not liable. Chapman's medics received $67,220.19 in payment under Montana's medicaid program as payment in full. Another $60,000 in medical expenses were incurred but disallowed under the reimbursement scheme. Accordingly, says Mazda, the Court should exclude evidence of medical bills beyond the amounts actually paid for Chapman's care. If the Court does so, Mazda says the parties can stipulate to the amount of past medical damages.

Mazda bases its legal position on § 27-1-201, M.C.A., which states that damage in a non-contract action "is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." A similar issue involving the appropriate measure of medical damages when paid by medicaid arose in *Hanif v. Housing Authority*, 200 Cal.App.3d 635, 246 Cal.Rptr. 192 (1988). Mazda argues this California case is persuasive authority supporting its position.

In *Hanif,* plaintiff was awarded the "reasonable value" of all medical expenses as damages, even though the proved expenses exceeded the amounts Medi–Cal had actually paid the health care providers. *Id.* at 639. The California court noted that the appropriate measure of damages in tort is "the amount which will compensate for all detriment proximately caused" by the injury. It held a plaintiff is not "to be placed in a better position than he would have been had the wrong not been done." *Id.* at 641.

"Medical expenses," the Court observed, "fall generally into the category of economic damages, representing the actual pecuniary loss caused by defendant's wrong." *Id.* Accordingly, the court found that "an award of damages for past medical expenses in excess of what the medical care and services actually cost constitutes over-compensation." *Id.* The true measure of plaintiff's damages is "the actual amount expended or incurred for past medical expenses so long as that amount is reasonable." *Id.* at 643. If the reasoning in *Hanif* applies equally to the Montana statute, Chapman cannot recover more than the actual amount paid on her behalf by medicaid for past medical expenses.

Chapman opposes any limitation on proof of medical expenses "because exclusion of a portion of medical bills would · mislead the jury regarding the nature and· extent of her injuries and damages." Br. in Opp. at 3. Chapman argues that any adjustments to her jury award must be made after trial under the collateral source rule. · Montana's collateral source rule states:

> In an action arising from bodily injury or death when the total award against all defendants is in excess of $50,000 and the plaintiff will be fully compensated for his damages, exclusive of court costs and· attorney fees, a plaintiff's recovery must be reduced by any amount paid or payable from a collateral source that does not have a subrogation right.

§ 27–1–308(1), M.C.A. (1997).

If I deny Mazda's motion, and a subsequent jury award includes not only the actual amount paid under medicaid but also the disallowed medical expenses, the award would have to be reduced. Nonetheless, the issue at this juncture is whether the Court should permit evidence on damages .(disallowed medical expenses) that Chapman is not entitled to recover. *See Hanif, supra.*

Arguably, if Chapman is not entitled to recover disallowed medical expenses, they are irrelevant. It follows that if the parties agree the amount actually paid by medicaid in full settlement of medical expenses was $67,220.19, then the jury could be instructed that, if it finds for plaintiff, it should award $67,220.29 in past medical expenses.

While the amounts of disallowed medical expenses are not relevant to prove damages for past medical loss, it does not follow that the evidence of medical expenses is irrelevant for all purposes. For instance, Chapman says evidence of total medical bills is admissible "to show the jury the severity and the extent of her injuries." Br. in Opp. at 3. I agree. Even if medical expenses were disallowed by medicaid, the documentation for such expenses presumably lists the medical procedures and treatments dispensed. They may bear on the necessity of future needs and provide a foundation for a life care plan. They are relevant to prove the nature and extent of Chapman's injuries. Evidence of cost for the complete range of treatment and care dispensed in past medical treatment may be relevant to future medical care ·and expenses required.

Accordingly, Mazda's motion is **DENIED.**

**B. Evidence of seat belt use**

Mazda argues that plaintiff cannot introduce evidence at trial that she used her seat belt during the accident. Mazda bases this argument on the prohibitions set forth in the Montana Seat Belt Use Act, §§ 61–13–101 to –106 M.C.A. (1997). The argument is not well taken.

The fallacy of Mazda's position rests upon a limited view of § 61–13–103(1) M.C.A., (requiring seat belt use) and its purpose. The premise of Mazda's argument is that the seat belt statute can be read without regard to the context of Montana tort liability law.

The Montana legislature recognizes that a wrongdoer is subject to tort liability in negligence as well as strict liability. § 27–1–701, M.C.A. (Negligence); § 27–1–719, M.C.A. (Liability of Seller of Product for Physical Harm to User or Consumer). The former is focused on *conduct* ("everyone is responsible. not only for the results of his willful acts but also for injury occasioned to another by his want of ordinary care or skill ...") while the later is focused on the *condition* of a product ("A person who sells a product in a defective condition unreasonably dangerous to a user or consumer is liable for physical harm caused by the product....").

The distinction in focus between conduct and condition is an integral part of

Montana tort law. An action against a manufacturer on a negligence theory focuses on the degree of care used by the defendant in design or manufacture. The standard of care is measured by the knowledge and conduct of a reasonable manufacturer under the same or similar circumstances. *Rost v. C.F. & I. Steel Corp.*, 189 Mont. 485, 616 P.2d 383 (1980).

Strict liability is warranted even though in some situations it may result in liability being imposed upon careful manufacturers. As the *Rost* court noted:

> Unforeseeable product defects often cause severe physical injuries to members of the public. The manufacturer can distribute the risk from such accidents among the body of consumers, while the individual consumer must bear the financial burden alone. Placing the risk of loss on the manufacturer provides an incentive to design and produce fail-safe products.... [A] manufacturer with research capabilities can anticipate hazards better than unsophisticated purchasers. Strict liability has its underpinnings in public policy.

*Rost*, 616 P.2d at 386.

For Mazda to prevail, it is necessary to ignore the legal distinctions between negligence and strict liability. Mazda argues the seat belt statute applies across the board in any civil action. The statute in question reads as follows:

> Evidence of compliance or failure to comply with 61–13–103 is not admissible in any civil action for personal injury or property damage *resulting from the use or operation of a motor vehicle,* and failure to comply with 61–13–103 does not constitute *negligence.* 61–13–106, M.C.A. (Emphasis added).

■ Mazda's reading of this statute is strained because it emphasizes the words "not admissible in any civil action for personal injury" and ignores the qualifying clause, "resulting from the use or operation of a motor vehicle." Mazda's narrow reading of the statute would bar any Montana product liability claim that involved the failure of passenger restraints. The focus of the seat belt statute is on conduct, "use or operation", and that relates to negligence. If the statute is read in context, limited to claims involving conduct, then nothing in it suggests evidence about the use of seat belts is inadmissible if the fact finder is deciding a claim for strict liability. Strict liability focuses on the condition of a motor vehicle, not on its use or operation.

Furthermore, if Mazda's reading of the statute is right, Montana's strict liability statute would have to contain an implied clause that an injured party can sue a manufacturer for injuries caused by a defective product unless the product is a seat belt. Such a determination would virtually eliminate crashworthiness claims as actionable in Montana.

■ The statute pertains to evidence in negligence claims. The defendant can not prove comparative fault in a negligence claim arising out of the use or operation of a motor vehicle by showing the injured party was not wearing a seat belt. Likewise, the injured party in a claim arising out of the use or operation of a motor vehicle can not show the absence of contributory fault by proving a seat belt was in use at the time of the damage resulting from the use or operation of the motor vehicle.

While Mazda may be correct that in arguing that the statute means what it says, it is wrong in its view of what is said. My reading of the statute is consistent with the conceptual framework of Montana tort law, it makes the various statutes fit. There is a difference between evidence used when the conduct of the parties is at issue and evidence that can be used when the condition of the product is at issue. *See Rix v. GM,* 222 Mont. 318, 723 P.2d 195 (1986) (discussing liability theories in product action); *Brothers v. GM,* 202 Mont. 477, 658 P.2d 1108 (1983) (holding that because negligence involves human conduct and product defect does not, *res ipsa loquitur* is inapplicable); *Sternhagen v. Dow Co.,* 282 Mont. 168, 935 P.2d 1139 (1997) (both case law and statutory law make clear even careful manufacturers may be strictly liable even for unforeseen dangers; strict liability focuses on product condition, not manufacturer's conduct).

In *Califato v. Gerke,* 258 Mont. 68, 852 P.2d 121 (1993) the Montana Supreme Court held that § 61–13–106, M.C.A. is not an absolute bar to evidence about seat belt use. The

Court reasoned that § 61–9–409 required new and used cars sold in Montana after the 1966 model to have safety belts installed. Accordingly the Court reasoned that "[t]o hold that the statute has been complied with if the seat belts are present in the vehicle, even though *rendered inoperable by the owner* of the vehicle, would clearly frustrate the Legislature's purpose for enacting the statute." *Califato v. Gerke, id.* at 73, 852 P.2d 121.

Both parties discuss *Califato.* Mazda says the case is distinguishable because in it, the seat belt had been disabled and consequently was not available for use. Here, because Chapman claims the seat belt failed to restrain her, Mazda believes the *Califato* exception does not apply. Chapman argues the statute does not bar evidence of seat belt use. Chapman's effort to distinguish *Califato* misses the mark. According to her argument because her claims are not based on Title 61, Chapter 13, § 61–13–106 does not apply.

Mazda has the better view of *Califato* but only as it relates to when an operable seat belt system is in place and the liability theory is negligence. There is no question here about the availability of the seat belt. *Califato* provides an analogy for applying the statute when conduct is in question but not applying it when the condition of the vehicle is in question.

■ Chapman's claim is that the condition of the vehicle was defective because a defective design in the installed restraint system caused her injury. The statute did not apply in *Califato* because the condition of the car there did not comply with the statutory duty to have operable seat belts installed. Here, like *Califato,* when a defective or inoperable restraint system is at issue in a design case, § 61–13–106, M.C.A. does not apply. *Califato, id.* at 72, 852 P.2d 121. This is so because it is the condition of the car that is at issue, not the conduct of the seat belt users.

Judge Holter's ruling in *Livingston v. Isuzu Motors, Ltd.,* 910 F.Supp. 1473, 1482 (1995) can be distinguished because he correctly rejected an argument made by the defendant, where the offered proof was to show contributory fault through the non-use of a seat belt.

■ Furthermore, Mazda's reading of § 61–13–106 impermissibly creates a defense to a product liability claim that neither the legislature, nor the Montana Supreme Court recognizes. The only defenses available in Montana strict liability actions are statutory. *Lutz v. National Crane,* 267 Mont. 368, 884 P.2d 455 (1994) (contributory negligence except as provided in § 27–1–719 is not a defense in strict liability); *Hart–Albin Co. v. McLees Inc.,* 264 Mont. 1, 870 P.2d 51 (1994) (Misuse not a defense if use of product is foreseeable). If Mazda's view of § 61–13–106 is right there is now a new defense to a product liability crashworthiness claim. (Def. Reply Br. p. 7, L 6) ("Evidence of its use or non-use of her seat belt ... extinguishes plaintiff's seat belt defect cause of action").

Considered in its conceptual context I find that § 61–13–106 bars proof of seat belts in a claim for negligence. I find that § 61–13–106 does not apply to product liability claims for the reasons set forth above and I believe the Montana Supreme Court would so find if the question were asked of it.

■ Plaintiff must now confront the "Sword of Damocles" created by her pleadings and her theories of liability. She must elect her theory of liability. The problem is this: Chapman claims Mazda was negligent in its design of the passenger compartment of the truck she was riding in. To prove her negligence claim, she must show not only what happened, but she must prove she was not at fault. She proves she was without fault by showing she was wearing her seat belt. Her proof of negligence is predicated in part on showing her injuries were caused by the negligent design. Seat belt use is an integral part of that negligent design claim. Section 61–13–106, M.C.A., specifically prohibits the evidence Chapman needs to prove negligence in the design of the car.

If Chapman chooses to proceed with her negligence claims, Mazda's motion in limine will be granted. If she chooses to proceed with a product liability design defect crashworthiness case, the motion will be denied.

Under Federal Rule of Evidence 403, I find that to allow the seat belt evidence on one theory and to disallow it on the other would hopelessly confuse the jury. I do not

believe a reasonable jury could simultaneously determine the negligence claim while ignoring the seat belt evidence relevant to the crashworthiness claim. Cautionary instructions telling the jury to consider the evidence for a limited purpose would not overcome the issue confusion. Confusion of issues is a basis to disallow the proof under Rule 403, Fed.R.Evid.

I **reserve ruling** on the seat belt evidence pending plaintiff's action on her theories of liability.

## C. Other Accidents

Mazda objects to an opinion developed by Chapman's experts, Syson and Hille. Both state they have experienced racing rollovers without injury "in vehicles with good seat belt restraint systems and roof structures adequate to preserve occupant survival." Mazda also objects to materials relied on by Syson and Hille. Those include an advertisement for a 1964 Saab shown rolling down a snow covered hill, and a photo from the Missoulian of an accident scene after a Missoula County Deputy's GMC vehicle rolled over on I–90. Mazda says evidence of these other accidents should be excluded because Chapman has not shown they are substantially similar to the subject incident.

Chapman says the evidence is admissible. She concedes that she cannot introduce evidence of other acts without a showing of substantial similarity as direct proof of design defect. However, she says the evidence is admissible so long as she does not contend it duplicates the actual accident. Furthermore, argues Chapman, the evidence is admissible to impeach any testimony by Mazda experts that the roof strength of the Mazda B2600 Cab Plus is comparable in strength to other vehicle roofs.

The applicable legal standards are set forth in *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103 (9th Cir.1991). There, Cooper was injured when an RH5 truck rim exploded as he was servicing a wheel and tire. The trial court admitted evidence of other RH5 accidents to impeach Firestone's expert testimony that the RH5 was generally safe. *Id.* at 1105.

The court noted that "[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect." *Id.* That showing is necessary because dissimilar accidents are irrelevant. *id.*

Even so, "[t]he problem of relevancy involved when plaintiffs have sought to introduce evidence of dissimilar accidents in their case-in-chief is not present when the evidence is relevant to credibility." *Id.* If an expert testifies that a product is generally safe, the expert's credibility "can be undermined by showing the witness had knowledge of prior accidents caused by the product." *Id.* Evidence of dissimilar accidents "tends to show the witness's claims of product safety are overstated and the witness therefore may not be reliable." *Id.*

*Kuiper v. Goodyear Tire & Rubber Co.*, 207 Mont. 37, 673 P.2d 1208 (1983) provides further guidance. In Montana the test for such evidence is whether the circumstances surrounding the product involved in other accidents is substantially the same or similar to the accident in issue. Id. at 1219. In persuasive authority the Montana Supreme Court held that "Accidents need not be identical to be admissible." *Tacke v. Vermeer Manufacturing Co.*, 220 Mont. 1, 713 P.2d 527, 532 (1986). In *Tacke*, when the evidence of other accidents involved the same product, the Court recognized that such proof was relevant to a number of other issues including foreseeabilty, knowledge, and notice. Such proof might also be relevant to defect or alternative design.

Applying the *Cooper* standards here, Chapman's experts may not testify or refer to materials about other accidents in her casein-chief absent a showing of substantial similarity. This kind of evidence issue can only be resolved in the context of trial testimony. I **reserve ruling** on the motion and will rule as necessary at trial on the use of other-accident evidence whether for impeachment or any other permissible purpose.

## D. Expert Opinion on Sufficiency of Discovery

Chapman retained Richard Hill and Stephen Syson of Syson–Hille & Associates, Engineering Services, as experts in the case. They preface their findings and opinions by

stating, "You are aware that with the limited discovery provided by Defendant Mazda Motor Corporation, we will not be able to establish whether or not there is a manufacturing defect in the subject pickup truck." At paragraph 10 of their findings, they state, "Mazda's failure to provide all the appropriate documents and drawings requested has prevented Plaintiff from determining whether this vehicle was even built to Mazda's own specifications." Mazda Mot. Ex. 3.

These opinions are not a proper subject for engineering experts under Rule 702 of the Federal Rules of Evidence. The proper scope of discovery is purely a legal issue to be determined by the Court. Furthermore, it appears to me that Chapman's experts are fishing for more liability theories. The case is about design and crashworthiness. Expert opinions on the quality of discovery is off limits and out of order.

Mazda's motion in limine to exclude testimony by Chapman's experts on the scope of discovery is **GRANTED**.