ROBINSON, Appellant,

v.

BATES, Appellee.

[Cite as *Robinson v. Bates*, 160 Ohio App.3d 668, 2005-Ohio-1879.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040063.

Decided April 22, 2005.

Scott A. Best, for appellant.

Trenz, McKay & Knabe Co., L.P.A., and Timothy E. McKay, for appellee.

MARK P. PAINTER, Judge.

{¶ 1} In this landlord-negligence case, we decide two issues. First, we hold that the open-and-obvious doctrine does not abrogate a landlord's statutory duty to keep leased premises in a fit and habitable condition. Second, in a case of first impression in Ohio, we hold that under the collateral-source rule, a plaintiff's recovery of the reasonable value of her medical treatment is not limited to the amount paid by her insurance.

## I. Jagged Concrete Slabs

{¶ 2} While in her driveway to get in her car, plaintiff-appellant, Caroline Robinson twisted her foot and broke a bone. She sued her landlord, defendant-appellee, Helen Gist Bates, trustee, for negligence.

{¶ 3} Several days before Robinson's accident, Bates's grandson, acting as her agent, had hired a contractor to tear down the retaining walls on both sides of the driveway. The construction work had left jagged concrete slabs where the walls had been. For several days after the walls were torn down, Robinson maneuvered around the construction to get in and out of her car. Eventually, she twisted her foot when she stepped on an uneven concrete slab where the retaining wall had been.

{¶ 4} In her first assignment of error, Robinson asserts that the trial court erred when it directed a verdict in favor of Bates.

{¶ 5} To establish actionable negligence at trial, Robinson had to show the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach.[1] Typically, a duty may be established by common law, by legislative enactment, or by the particular facts and circumstances of the case.[2] Where a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence per se.[3]

{¶ 6} Application of negligence per se in a tort action means that the plaintiff has definitively established that the defendant breached a duty that he or she owed to the plaintiff.[4] But it is not a demonstration of liability per se because the plaintiff also has to prove proximate cause and damages.[5]

## II. Statutory Duty Trumps Open–and–Obvious Doctrine

{¶ 7} A landlord has many duties to a tenant. One statutory duty, under R.C. 5321.04(A)(2), provides, "A landlord who is a party to a rental agreement shall * * * [m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." The Ohio Supreme Court has held that a landlord's violation of the duties in R.C. 5321.04(A)(2) constitutes negligence per se.[6]

{¶ 8} In this case, the trial court concluded that after viewing all the evidence in Robinson's favor, reasonable minds could come to but one conclusion and that conclusion was that Robinson had failed to establish her claim. Not so.

{¶ 9} A court of appeals reviews the trial court's ruling on a motion for a directed verdict de novo.[7] Where reasonable minds can reach different conclusions regarding the evidence presented and where there is substantial,

---

1. See *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271.

2. See *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198.

3. Id.

4. Id.

5. Id.

6. *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 498, 727 N.E.2d 1277.

7. See *McConnell v. Hunt Sports Enterprises* (1999), 132 Ohio App.3d 657, 686–687, 725 N.E.2d 1193.

competent evidence to support the claim of the party against whom the motion is made, the motion for a directed verdict must be denied.[8]

{¶ 10} The undisputed testimony of the parties established that the landlord's grandson, Walter Rice, hired a contractor to do numerous repairs on the property, a single-family house. The first thing the contractor did was to tear down the retaining walls on either side of the driveway. The loose concrete bricks and other rubble were piled at the end of the driveway towards the garage. A slightly raised and uneven concrete surface remained where the walls formerly stood.

{¶ 11} Rice testified that he told the contractor to put caution tape around the construction. But the contractor did not. Rice also testified that after tearing the walls down, the contractor quit the job. Rice did nothing to remedy the situation, except to move some of the concrete bricks to the edge of the driveway to create more space for cars to park.

{¶ 12} Rice testified that he knew about the construction and the state of the driveway. He admitted that he knew there were stones and debris in the driveway. When asked "Were you aware of the dangerous condition of the driveway?" he answered, "Yes, correct."

{¶ 13} Viewing the evidence most strongly in Robinson's favor, we hold that reasonable minds could conclude that Bates had violated her statutory duty to Robinson and committed negligence per se. That conclusion would mean that Bates's duty and breach of that duty were definitively established. It would then be a question of fact for a jury to decide whether Robinson had suffered an injury caused by the state of the driveway. Because a jury certainly could conclude that Robinson had established all the elements of her negligence claim, we hold that a directed verdict in favor of the landlord was unwarranted.

{¶ 14} In urging us to affirm the trial court's directed verdict, Bates points out that Robinson was well aware of the jagged concrete slab because she had passed it for several days while getting in and out of her car. Bates argues that under the open-and-obvious doctrine, she owed no duty to warn Robinson or even to remedy the dangerous condition.

{¶ 15} But open-and-obvious is a common-law doctrine that cannot relieve a landlord of *statutory* duties. As the Ohio Supreme Court made clear in *Armstrong v. Best Buy,* the open-and-obvious doctrine concerns only whether a duty exists.[9] It does not go to causation or any other element of negligence. It can act as a bar only to a landowner's duty. But the duty that Robinson claims

---

8. See *Kroh v. Continental Gen. Tire, Inc.* (2001), 92 Ohio St.3d 30, 31, 748 N.E.2d 36; Civ.R. 50(A)(4).

9. *Armstrong v. Best Buy,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 8.

Bates breached was a statutory duty. There can be no debate about whether this duty existed—it is written in the Revised Code.

{¶ 16} If a jury determines that Bates failed to keep the premises in a fit and habitable condition, then it is negligence per se, and Robinson will have definitively established that Bates had a duty and breached it. We agree with Robinson that it would be nonsensical to hold that the open-and-obvious doctrine could somehow eviscerate the landlord's statutory duty to keep leased residential premises in a fit and habitable condition. That holding would allow landlords to flagrantly violate Ohio's Landlord Tenant Act as long as the violations are open and obvious.

### III. Other Districts Agree

{¶ 17} Under similar facts, the Tenth Appellate District held that the open-and-obvious doctrine could not abrogate a landlord's statutory duty to make repairs. In *Schoefield v. Beulah Road,*[10] a tenant's daughter tripped on deteriorated concrete steps in front of her mother's apartment building, fell, and suffered an injury. The steps had been broken for several months, and the tenant, the daughter, and the landlord all were aware of the condition of the steps. In addition, similar to Robinson's accident, the tenant's daughter tripped at night in an area with little lighting.

{¶ 18} The court held that the open-and-obvious doctrine could not operate to somehow negate a landlord's duty under R.C. 5321.04(A)(2). The court held that the open-and-obvious doctrine concerned a landowner's duty to warn and protect against open and obvious dangers, while in the case before it, the court was dealing with a different duty—the duty to repair. The court further held that the violation of a statutory duty constituted negligence per se, making any open-and-obvious issue relevant only to comparative negligence (which this author believes it should be in any case).

{¶ 19} Likewise, in *Crawford v. Wolfe,* the Fourth Appellate District reversed a summary judgment entered for a landlord.[11] The landlord had failed to install handrails on the front steps leading into a house. On an icy day, the tenant slipped and fell, breaking her wrist and spraining her ankle. The court, citing *Schoefield,* held that "the open-and-obvious-danger doctrine was simply not intended as an exception to the statutory duties imposed on a landlord."[12] The court held that the landlord had violated R.C. 5321.04(A)(2) and remanded the case for a trial.

---

**10.** *Schoefield v. Beulah Road, Inc.* (Aug. 26, 1999), 10th Dist. No. 98AP–1475, 1999 WL 645273.

**11.** *Crawford v. Wolfe,* 4th Dist. No. 01CA2811, 2002-Ohio-6163, 2002 WL 31521593.

**12.** Id. at ¶ 56.

{¶ 20} By similar reasoning, the "step-in-the-dark" rule does not apply to abrogate a landlord's statutory duty. Under this common-law doctrine, darkness itself is considered a warning of danger and can relieve a landowner of the duty to warn of a danger.[13] But such a rule cannot relieve a landlord of a *statutory* duty to keep the premises in a fit and habitable condition.

{¶ 21} We conclude that in the present case, a directed verdict in favor of the landlord was improper. We therefore sustain Robinson's first assignment of error, reverse the entry of the directed verdict, and remand the case for a new trial.

### IV. Medical Bills Should Be Admitted

{¶ 22} In her second assignment of error, Robinson argues that the trial court improperly excluded four proffered exhibits.

{¶ 23} The proffered exhibits were itemized bills of Robinson's medical treatment for her foot injury. The bills totaled $1,919. At trial, the parties stipulated that the amount actually paid by Robinson's insurance company to settle her medical bills was $1,350.43.

{¶ 24} The trial court refused to admit the medical bills, reasoning that the lesser amount paid by the insurance company was the only amount the jury should consider for damages. The trial court stated, "The law in the State of Ohio is that it's—the amount of bills that the jury can consider in a case is the amount of bills that is unpaid; or if they're paid, the amount that were paid. This is to prevent people from inflating bills and everything else. There is solid policy reasons behind it."

{¶ 25} Robinson now argues that the trial court improperly excluded her evidence of the reasonable and necessary costs of treating her injury.

{¶ 26} R.C. 2317.421 states, "In an action for damages arising from personal injury or wrongful death, a written bill or statement, or any relevant portion thereof, itemized by date, type of service rendered, and charge, shall, if otherwise admissible, be prima-facie evidence of the reasonableness of any charges and fees." And the Ohio Supreme Court has held, "Proof of the amount paid or the amount of the bill rendered and of the nature of the services performed constitutes prima facie evidence of the necessity and reasonableness of the charges for medical and hospital services."[14]

---

13. See *Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 44 O.O.2d 196, 239 N.E.2d 37.

14. *Wagner v. McDaniels* (1984), 9 Ohio St.3d 184, 9 OBR 469, 459 N.E.2d 561, paragraph one of the syllabus.

{¶ 27} In general, Ohio courts have held that a trial court must admit proffered medical bills and that the defense is then free to rebut the prima-facie evidence of necessity and reasonableness.[15] Therefore, as a matter of law, the trial court was wrong in its decision to exclude Robinson's proffered medical bills.

{¶ 28} But this case goes beyond just whether Robinson's proffered medical bills were admissible. Negotiated and contracted discounts on medical bills between health-care providers and insurers are increasingly prevalent.[16] Under these agreements, an insurer's liability for the medical expenses billed to the insured is often satisfied at discounted rates, with the remainder being written off by the health-care providers.

{¶ 29} The trial court held that Robinson was not entitled to seek recovery for the written-off amount of her medical bills. Whether Robinson was entitled to seek recovery for the amount billed to her for her medical care or only for the amount negotiated and paid by her insurance is a question of law that bears further scrutiny.

### V. Collateral–Source Rule

{¶ 30} No Ohio court has addressed the issue whether plaintiffs are entitled to recover the full amount of their medical costs or may seek only the amount paid by their insurance. But many other state and federal courts have.

{¶ 31} Numerous courts have determined that a plaintiff is entitled to recover the reasonable value of the medical services rendered regardless of the amount paid by the plaintiff's insurance. Supporting this conclusion is the collateral-source rule.

{¶ 32} Under the collateral-source rule, a plaintiff's recovery cannot be reduced by payments or benefits from other sources.[17] The collateral-source rule prevents any payments made on the plaintiff's behalf or gratuitous benefits received by the plaintiff from benefiting a defendant-tortfeasor. The rule is grounded in the long-standing policy decision that should a windfall arise because of an outside payment, the party to profit from that collateral source is the person who has been injured, not the one whose wrongful acts caused the injury.

{¶ 33} The practical effect of the collateral-source rule is that the jury is prevented from learning anything about the collateral income so that it will not

---

**15.** See *Coleman v. Drayton* (Mar. 24, 1994), 10th Dist. No. 93APE10–1402, 1994 WL 97102; *Homeyer–McGee v. Hood* (Mar. 28, 2002), 8th Dist. No. 79552, 2002 WL 471363.

**16.** See *Koffman v. Leichtfuss* (2001), 246 Wis.2d 31, 44, 630 N.W.2d 201.

**17.** See *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 107, 52 O.O.2d 395, 263 N.E.2d 235.

influence its determination of damages.[18] In the context of medical-expense damages, the collateral-source rule allows plaintiffs to seek recovery of the reasonable value of medical services without consideration of payments made on their behalf by insurance.[19]

{¶ 34} The Ohio Supreme Court has stated that under the collateral-source rule, "the plaintiff who has * * * had his medical expenses paid for by another, or out of the proceeds of an accident insurance policy, may still recover full damages for these items from a defendant who is liable for the injury. To this extent, plaintiff may get double payment on account of the same items. The defendant wrongdoer should not, it is said, get the benefit of payments that come to the plaintiff from a 'collateral source' (i.e., 'collateral' to the defendant)." [20]

{¶ 35} The issue here is whether the collateral-source rule applies to prevent a defendant-tortfeasor from benefiting from an agreement between a plaintiff's health-care provider and insurer to write off a certain amount of the plaintiff's medical costs.

{¶ 36} In Ohio, a plaintiff who has been injured by the tortious conduct of another may recover the reasonable value of medical services rendered.[21] The touchstone of the plaintiff's recovery is the reasonable *value* of the services rendered, not the actual charge or the cost incurred for those services. As the South Carolina Supreme Court recognized, "Clearly, the amount actually paid for medical services does not alone determine the reasonable value of those medical services." [22]

{¶ 37} According to the Second Restatement of Torts, "[I]t is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives." [23] The Restatement continues, "The damages are not reduced by the fact that the plaintiff has suffered no net financial loss as the result of the entire transaction, as when he receives insurance money or an amount equal to his lost wages from his employer or from a friend." [24]

---

18. Id. at 109, 52 O.O.2d 395, 263 N.E.2d 235.

19. Restatement of the Law 2d, Torts (1979), Section 920A, Comment *c*.

20. *Pryor v. Webber*, supra, 23 Ohio St.2d at 108, 52 O.O.2d 395, 263 N.E.2d 235.

21. See *Wagner v. McDaniels*, supra note 14.

22. *Haselden v. Davis* (2003), 353 S.C. 481, 484, 579 S.E.2d 293.

23. Restatement of the Law 2d, Torts (1979), Section 920A, Comment *b*.

24. Restatement of the Law 2d, Torts (1979), Section 924, Comment *c*.

■ {¶ 38} Even medical services rendered gratuitously would not prevent a plaintiff from recovering the value of those services as part of his or her compensatory damages. The Restatement explains, for example, that "the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services." [25]

{¶ 39} The South Carolina Supreme Court stated, "[R]ecovery does not depend on whether there is any bill at all, and the tortfeasor is liable for the value of medical services even if they are given without charge, since it is their value and not their cost that counts." [26] The Hawaii Supreme Court has even stated that the amount written off between the amount billed and the amount paid "could be viewed conceptually as gratuitous service to the plaintiff, so as to come within the collateral source rule." [27]

{¶ 40} Some courts have preferred to use a contractual analysis to conclude that a plaintiff is entitled to recover the full amount of billed medical charges. In *Acuar v. Letourneau*, the Virginia Supreme Court held that the written-off amount was a benefit the plaintiff should have received from the contractual arrangement with his health insurer carrier.[28] The Virginia court stated, "Those amounts written off are as much of a benefit for which [the plaintiff] paid consideration as are the actual cash payments made by his health insurance carrier to the health care providers. The portions of medical expenses that health care providers write off constitute 'compensation or indemnity by a tort victim from a source collateral to the tortfeasor.' " [29]

{¶ 41} The District of Columbia Court of Appeals has reached a similar conclusion.[30] In *Hardi v. Mezzanotte*, the court stated, "[W]here the party pays the premium for insurance, she is entitled to the benefit of the bargain contracted for including any reduction in payments that the insurance carrier was able to negotiate. * * * [B]ecause any write-offs enjoyed by [the plaintiff] were negotiated by her private insurance company, a source independent of [the defendants],

---

25. Id. at 920A, Comment *c*.

26. *Haselden*, supra, 353 S.C. at 484, 579 S.E.2d 293, quoting Dobbs, Handbook on the Law of Remedies (1973), Section 8.1, at 543.

27. *Bynum v. Magno* (2004), 106 Hawai'i 81, 88, 101 P.3d 1149.

28. *Acuar v. Letourneau* (2000), 260 Va. 180, 188, 531 S.E.2d 316.

29. Id. at 192, 531 S.E.2d 316, quoting *Schickling v. Aspinall* (1988), 235 Va. 472, 475, 369 S.E.2d 172.

30. *Hardi v. Mezzanotte* (D.C.App.2003), 818 A.2d 974.

they should be included in her damages. Under the collateral source rule, she is entitled to all benefits resulting from her contract."[31]

{¶ 42} Likewise, in *Arthur v. Catour*, an Illinois appellate court determined that the collateral-source rule applied not only to what an insurance company paid for a plaintiff's bills, but also to any written-off amount.[32] The court stated, "Although 'discounting' of medical bills is a common practice in modern healthcare, it is a consequence of the power wielded by those entities, such as insurance companies, employers and governmental bodies, who pay the bills. While large 'consumers' of healthcare such as insurance companies can negotiate favorable rates, those who are uninsured are often charged the full, undiscounted price. In other words, simply because medical bills are often discounted does not mean that the plaintiff is not obligated to pay the billed amount. Defendants may, if they choose, dispute the amount billed as unreasonable, but it does not become so merely because plaintiff's insurance company was able to negotiate a lesser charge."[33] (Citations omitted.)

{¶ 43} The Illinois court further held that limiting the plaintiff's damages to the amount paid by her insurer conferred a significant benefit of that coverage on the defendants. The court concluded, "This result is directly contrary to the collateral source rule's goal of ensuring 'that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons.'"[34]

{¶ 44} We think this analysis is the fairest approach to the plaintiff-victim and also supports the public-policy purposes of the collateral-source rule. As stated by the Wisconsin Supreme Court, "The collateral source rule prevents payments made by the insured from inuring to the benefit of the defendant, and the insurer's subrogation rights prevent a double recovery on the part of the plaintiff."[35]

{¶ 45} The Wisconsin court further noted, "Applying the collateral source rule to payments that have been reduced by contractual arrangements between insurers and health care providers assures that the liability of similarly situated defendants is not dependent on the relative fortuity of the manner in which each

---

31. Id. at 984–985.

32. *Arthur v. Catour* (2004), 345 Ill.App.3d 804, 281 Ill.Dec. 243, 803 N.E.2d 647.

33. Id. at 806, 281 Ill.Dec. 243, 803 N.E.2d 647.

34. Id. at 807, 281 Ill.Dec. 243, 803 N.E.2d 647, quoting *Wilson v. Hoffman Group, Inc.* (1989), 131 Ill.2d 308, 320, 137 Ill.Dec. 579, 546 N.E.2d 524.

35. *Koffman*, 246 Wis.2d at 52, 630 N.W.2d 201.

plaintiff's medical expenses are financed. One plaintiff may be uninsured and receive the benefit of Medical Assistance, another's insurer may have paid full value for the treatment, and yet another's insurer may have received the benefit of reduced contractual rates. Despite the various insurance arrangements that exist in each case, the factor controlling a defendant's liability for medical expenses is the reasonable value of the treatment rendered." [36]

{¶ 46} As the Hawaii Supreme Court observed, limiting the plaintiff's recovery based on whatever the plaintiff's insurance agreed to pay "would create various new categories of plaintiffs, similarly injured, whose recovery would depend upon the type of their insurance coverage, and not upon the nature of their injuries." [37]

{¶ 47} In addition to the courts already mentioned in Wisconsin, Kansas, Illinois, the District of Columbia, Hawaii, South Carolina, and Virginia, courts in Georgia, Mississippi, Missouri, Texas, Louisiana, and New Hampshire have also concluded that plaintiffs are entitled to recover the amount written off from their medical bills.

{¶ 48} The Mississippi Supreme Court held that Medicaid payments (which are typically much lower than the billed amount) are subject to the collateral-source rule. [38] Consequently, plaintiffs in Mississippi can recover the full amount of their medical bills without being limited to the amount Medicaid, or any insurance, agrees to pay.

{¶ 49} Echoing the Wisconsin Supreme Court's observation that the plaintiff's ability to pay should be an irrelevant consideration in determining the value of damages caused by a defendant, the Mississippi court stated that the defendant "does not get a break on damages just because it caused permanent injuries to a poor person." [39]

{¶ 50} Appellate courts in Georgia and Missouri have held that the collateral-source rule applies to the written-off portion of a plaintiff's medical expenses. [40] A Texas appellate court concluded, "[I]f the treatment and charges are reasonable and necessary to treat the patient, recovery is permitted regardless of what was

---

36. Id. at 49, 630 N.W.2d 201.

37. *Bynum*, supra, 106 Hawai'i at 94, 101 P.3d 1149.

38. *Wal–Mart Stores, Inc. v. Frierson* (Miss.2002), 818 So.2d 1135; *Brandon HMA, Inc. v. Bradshaw* (Miss.2001), 809 So.2d 611.

39. *Brandon*, supra, 809 So.2d at 619.

40. *Olariu v. Marrero* (2001), 248 Ga.App. 824, 549 S.E.2d 121; *Candler Hosp., Inc. v. Dent* (1997), 228 Ga.App. 421, 491 S.E.2d 868; *Brown v. Van Noy* (Mo.App.1994), 879 S.W.2d 667.

actually paid or will be paid for the service."[41] And a United States District Court applying New Hampshire law concluded that "a plaintiff's recovery is not limited to the actual amount that has been paid or will be paid for medical services, but is instead measured by the reasonable value of such services."[42]

{¶ 51} In Louisiana, before the state supreme court addressed the issue, appellate courts were split. Some held that defendants were not relieved of liability for the written-off portion of a plaintiff's medical bills,[43] while others held that defendants were.[44]

{¶ 52} In *Griffin v. Louisiana Sheriff's Auto Risk Assn.,* an appellate court used logic similar to that of the Wisconsin Supreme Court. It stated that the purpose of the collateral-source rule was to prevent a tortfeasor from benefiting from the victim's foresight and prudence in securing insurance and other benefits. The court then stated that the application of the collateral-source rule made more sense when the analysis concerning write-offs focused on the defendant-tortfeasor, rather than on the victim.

{¶ 53} The court stated, "This rationale can best be understood by analyzing the write-offs in two situations: one in which a tortfeasor injures an uninsured victim and the other in which the same tortfeasor, in the same manner and to the same extent, injures an insured victim. Unless the write-offs are considered collateral sources, the tortfeasor would be relieved of his liability to the insured victim to the extent of the amount of the write-offs. The argument that there is no underlying obligation for plaintiff to pay the amount of the write-offs and, therefore, the plaintiff should not be allowed to benefit from a non-existent debt, falls because the effect of this reasoning results in a diminution of the tortfeasor's liability *vis-à-vis* an insured victim when compared with the same tortfeasor's liability *vis-à-vis* an uninsured victim."[45]

{¶ 54} In *Bozeman v. Louisiana,* the Louisiana Supreme Court resolved the split among the Louisiana appellate courts.[46] The court considered the policy

---

**41.** *Wong v. Graham* (Tex.App. Feb. 15, 2001), 3rd Dist. No. 03–00–00440–CV, 2001 WL 123932.

**42.** *Williamson v. Odyssey House, Inc.* (U.S.D.C.N.H. Nov. 3, 2000), No. Civ. 99–561–JD, 2000 DNH 238, 2000 WL 1745101.

**43.** *Griffin v. Louisiana Sheriff's Auto Risk Assn.* (La.App.2001), 802 So.2d 691; *Brannon v. Shelter Mut. Ins. Co.* (La.App.1988), 520 So.2d 984.

**44.** *Terrell v. Nanda* (La.App.2000), 759 So.2d 1026; *Suhor v. Lagasse* (La.App.2000), 770 So.2d 422; *Williamson v. St. Francis Med. Ctr., Inc.* (La.App.1990), 559 So.2d 929.

**45.** *Griffin,* supra, 802 So.2d at 715.

**46.** *Bozeman v. Louisiana* (La.2004), 879 So.2d 692.

reasons for the collateral-source rule and quoted with approval the *Griffin* court's analysis that the focus should be on the defendant rather than on the plaintiff.

{¶ 55} The *Bozeman* court then emphasized that the collateral-source rule encouraged citizens to purchase and maintain insurance and that the buying of insurance was an investment.[47] Quoting from a California Supreme Court case, the court continued, " 'If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance.' "[48]

{¶ 56} Applying that analysis, the Louisiana Supreme Court then distinguished write-offs made by Medicaid from write-offs made by either Medicare or private insurance. The court noted that a Medicaid plaintiff "pays no enrollment fee, has no wages deducted, and otherwise provides no consideration for the collateral source benefits he receives."[49] Thus, the court limited the recovery for a Medicaid plaintiff to whatever Medicaid actually paid for the plaintiff's treatment.

{¶ 57} Having distinguished the allowable recovery by a Medicaid plaintiff, it then held that any plaintiff whose "patrimony has been diminished in some way in order to obtain the collateral source benefits * * * is entitled to the benefit of the bargain, and may recover the full value of his medical services, including the 'write-off' amount."[50]

{¶ 58} The Kansas Supreme Court reached a similar conclusion. In *Rose v. Via Christi Health Sys., Inc.,* the court limited an appellate court's holding that a plaintiff could recover only what was actually paid for her medical bills to Medicaid plaintiffs.[51] The court distinguished Medicaid cases based on the recipient's lack of contribution to the program. The court then concluded that public policy "supports the theory that any windfall from the injured party's collateral sources should benefit the injured party rather than the tortfeasor, who

---

47. Id. at 704.

48. Id., quoting *Helfend v. S. California Rapid Transit Dist.* (1970), 2 Cal.3d 1, 10, 84 Cal.Rptr. 173, 465 P.2d 61.

49. Id. at 705.

50. Id. at 706.

51. *Rose v. Via Christi Health Sys., Inc.* (2003), 276 Kan. 539, 546, 78 P.3d 798, limiting the holding of *Bates v. Hogg* (1996), 22 Kan.App.2d 702, 921 P.2d 249.

should bear the full liability of his or her tortious actions without regard to the injured parties' method of financing his or her medical treatment." [52]

{¶ 59} Although Louisiana and Kansas made an exception for Medicaid plaintiffs, courts in Wisconsin, Mississippi, Hawaii, Missouri, New Hampshire, and South Carolina have all allowed full recovery of billed expenses, even for Medicaid plaintiffs. [53]

{¶ 60} The South Carolina Supreme Court held that a physician "who agrees to become a Medicaid provider, thereby agreeing to accept as compensation for medical services those amounts set forth in the Medicaid agreement, who thereafter bills a Medicaid patient for the full value of his services, may not claim that the true, reasonable value of those services is the lesser amount paid by Medicaid." [54]

{¶ 61} The courts allowing full recovery to all plaintiffs recognized that a defendant's liability is for the reasonable value of the damage caused. It should not vary due to the financial situation of the plaintiff. As the Hawaii Supreme Court summarized, "[T]he collateral source rule seeks to place upon the tortfeasor the full responsibility for the loss he has caused." [55]

## VI. Minority View

{¶ 62} There are a number of courts that have held that a plaintiff's recovery should be limited to the amount actually paid by the plaintiff's insurance. But most of those courts have been influenced by state statutory limitations or abrogations of the collateral-source rule.

{¶ 63} For example, in Idaho, a statute titled "Prohibiting double recoveries from collateral sources" states that "a judgment may be entered for the claimant only for damages which exceed amounts received by the claimant from collateral sources as compensation for the personal injury. * * * Evidence of payment by collateral sources is admissible to the court after the finder of fact has rendered an award. Such award shall be reduced by the court to the extent the award includes compensation for damages, which have been compensated independently from collateral sources." [56]

---

52. *Rose v. Via Christi Health Sys., Inc.,* supra, 276 Kan. at 551, 78 P.3d 798.

53. *Koffman,* supra note 16; *Brandon,* supra note 38; *Bynum,* supra note 27; *Brown,* supra note 40; *Williamson v. Odyssey House, Inc.,* supra note 42; *Haselden,* supra note 22.

54. *Haselden,* supra, 353 S.C. at 485, 579 S.E.2d 293.

55. *Bynum,* supra, 106 Hawai'i at 90, 101 P.3d 1149.

56. Idaho Code 6-1606.

{¶ 64} The Idaho Supreme Court noted that "[n]either the language of I.C. Section 6–1606 nor its Statement of Purpose specifically deal with write-offs," but decided that a write-off "is the type of windfall that I.C. Section 6–1606 was designed to prevent."[57] The court held, " 'Although the write-off technically is not a payment from a collateral source within the meaning of [the collateral source statute], it is not an item of damages for which plaintiff may recover.' "[58]

{¶ 65} The Idaho court followed a rule adopted by states with statutes similar to that of Idaho. In *Kastick v. U–Haul,* a New York appellate court held that a write-off did not constitute payment from a collateral source.[59] Following the New York statute limiting a plaintiff's recovery,[60] the court reduced the plaintiff's award by the amount written off her hospital bill.[61]

{¶ 66} And in *Coop. Leasing v. Johnson,* a Florida appellate court also held that the reasonable value of medical services was limited to the amount accepted as payment in full for medical services.[62] The court reasoned that there was "no justification for adhering to the collateral source rule because it would permit plaintiff to 'exceed compensatory limits in the interest of insuring an impact upon the defendant.' "[63]

{¶ 67} But the Florida court relied heavily on the legislative intent expressed in a Florida statute that it said "abrogated the common law collateral source rule and replaced it with a statutory provision that allows certain payments from collateral sources to be set off from a plaintiff's recovery."[64] The court noted that the alteration of the collateral-source rule reflected a legislative intent to prevent plaintiffs from receiving a windfall. The court concluded, "Our holding in this case likewise allows an injured party to receive compensation for medical expenses for which they have become liable, but does not permit the plaintiff to receive a windfall by recovering 'phantom damages.' "[65]

---

57. *Dyet v. McKinley* (2003), 139 Idaho 526, 529, 81 P.3d 1236.

58. Id., quoting *Kastick v. U–Haul Co.* (2002), 292 A.D.2d 797, 798, 740 N.Y.S.2d 167.

59. *Kastick,* supra.

60. 1 New York Civil Practice Law and Rules (CPLR), Section 4545(c).

61. *Kastick,* supra.

62. *Coop. Leasing v. Johnson* (Fla.App.2004), 872 So.2d 956.

63. Id. at 958, quoting *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill.2d 353, 363, 29 Ill.Dec. 444, 392 N.E.2d 1.

64. Id.; Fla.Stat.Ann. 768.76.

65. *Coop. Leasing,* supra, 872 So.2d at 959; see, also, *Thyssenkrupp Elevator Corp. v. Lasky* (Fla.App.2003), 868 So.2d 547.

{¶ 68} Similarly, Montana has a statute requiring courts to reduce a plaintiff's recovery by any amount received from a collateral source that does not have subrogation rights.[66] A United States District Court applying Montana law acknowledged that even if the jury awarded the full amount of the plaintiff's medical bills, it would have to reduce the award.[67] Consequently, the court held that the plaintiff's recovery was limited to the amount paid by Medicaid.[68] But the court also held that the plaintiff's medical bills were admissible to show the jury the severity and extent of her injuries.[69] It also held that the medical bills were relevant to future medical care and expenses required.[70]

{¶ 69} Finally, Alaska also has a state statute that limits a plaintiff's recovery due to collateral sources.[71] While Alaska courts have not yet addressed the issue of whether a write-off would be considered a collateral source, in a dissent from a denial of a petition to review an interlocutory order, one Alaska Supreme Court justice wrote, "There is no reason to distinguish between cases where the provider writes off part of the care's value out of charity, because it has no hope of collecting, and cases where the payment is coming from an insurer—governmental or private—with bargaining power. The amount discounted out of a medical bill is part of the value of that collateral benefit and should not accrue to the defendant."[72]

{¶ 70} Ohio has no law limiting the collateral-source rule. While courts in Idaho, New York, Florida, and Montana have felt obligated to follow legislative intent to limit the collateral-source rule and a plaintiff's recovery, we are under no such constraint.

{¶ 71} But there are two states in which courts have determined, without any state law limiting the collateral-source rule, that the collateral-source rule does not allow plaintiffs to recover the written-off portion of their medical bills.

{¶ 72} In *Hanif v. Hous. Auth. of Yolo Cty.*, a California appellate court concluded that the "reasonable value" of a plaintiff's damages must·be the actual

---

66. Mont.Code Ann. 27–1–308(1).

67. *Chapman v. Mazda Motor of Am., Inc.* (D.Mont.1998), 7 F.Supp.2d 1123.

68. Id. at 1125.

69. Id.

70. Id.

71. Alaska Stat. 09.17.070(c); see *Loncar v. Gray* (Alaska 2001), 28 P.3d 928, 933.

72. *Lucier v. Steiner Corp.* (Alaska 2004), 93 P.3d 1052, 1053–1054.

amount paid or the amount for which the plaintiff incurred liability.[73] The court stated, "In tort actions, medical expenses fall generally into the category of economic damages, representing actual pecuniary loss caused by the defendant's wrong. * * * [I]t follows that an award of damages for past medical expenses in excess of what the medical care and services actually cost constitutes overcompensation."[74]

{¶ 73} While the court acknowledged that a defendant was liable for the "reasonable value" of the plaintiff's medical care, the court interpreted "reasonable value" to be "a term of limitation, not of aggrandizement." The court concluded, "Thus, when the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum certain is the most the plaintiff may recover for that care despite the fact it may have been less than the prevailing market rate."[75]

{¶ 74} The *Hanif* court emphasized that the purpose of tort damages is to compensate the plaintiff for the injury suffered. That is, the purpose is to restore the plaintiff as nearly as possible to his or her former position. The court stressed that a plaintiff in a tort action is not to be placed in a better position than he or she would have been in had the wrong not been done.

{¶ 75} In *Moorhead v. Crozer*, the Pennsylvania Supreme Court reached a similar conclusion.[76] As in *Hanif*, the *Moorhead* court focused on the fact that damages are meant to compensate plaintiffs for their medical expenses.[77] For this reason, the expenses must be limited to the costs that were actually incurred. The court concluded that the collateral-source rule did not apply to the "illusory" charge written off by insurance, because no collateral source had actually paid that charge.[78]

 {¶ 76} But the *Moorhead* court's position undermines the purpose of the collateral-source rule. The essence of the collateral-source rule is that, in some situations, somebody will receive a windfall, and it is fairer for the person receiving a windfall to be the plaintiff-victim rather than the defendant-wrongdoer.

---

73. *Hanif v. Hous. Auth. of Yolo Cty.* (1988), 200 Cal.App.3d 635, 246 Cal.Rptr. 192.

74. Id. at 641, 246 Cal.Rptr. 192.

75. Id.

76. *Moorhead v. Crozer* (2001), 564 Pa. 156, 765 A.2d 786.

77. Id. at 162, 765 A.2d 786.

78. Id. at 164, 765 A.2d 786.

▮▮▮▮▮▮▮▮▮▮▮

{¶ 77} The Second Restatement of Torts acknowledges that "[p]erhaps there is an element of punishment of the wrongdoer" in the collateral-source rule.[79] But the Restatement continues, "Perhaps also this is regarded as a means of helping to make the compensation more nearly compensatory to the injured party."[80]

{¶ 78} A California appellate court observed, "The collateral source rule also recognizes the inadequacies of damage awards for personal injuries. That is because '[l]egal "compensation" for personal injuries does not actually compensate. Not many people would sell an arm for the average or even the maximum amount that juries award for loss of an arm. Moreover the injured person seldom gets the compensation he "recovers," for a substantial attorney's fee usually comes out of it. The Rule helps to remedy these problems inherent in compensating the tort victim.' "[81]

▮▮▮ {¶ 79} The Ohio Supreme Court has acknowledged, "The collateral source rule is an exception to the general rule of compensatory damages in a tort action."[82] Therefore, in Ohio, "evidence of compensation from collateral sources is not admissible to diminish the damages for which a tort-feasor must pay for his negligent act."[83]

{¶ 80} The Virginia Supreme Court addressed the argument that a plaintiff's compensation should be only what expenses were incurred. The court stated, "That argument overlooks the fundamental purpose of the rule * * * to prevent a tortfeasor from deriving any benefit from compensation or indemnity that an injured party has received from a collateral source. In other words, the focal point of the collateral source rule is not whether an injured party has 'incurred' certain medical expenses. Rather, it is whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor."[84]

{¶ 81} The Virginia court continued, "This conclusion is consistent with the purpose of compensatory damages, which is to make a tort victim whole.

79. Restatement of the Law 2d, Torts (1979), Section 920A, Comment b.

80. Id.

81. *Arambula v. Wells* (1999), 72 Cal.App.4th 1006, 1009, 85 Cal.Rptr.2d 584, quoting Antracoli, California's Collateral Source Rule and Plaintiff's Receipt of Uninsured Motorist Benefits (1986), 37 Hastings L.J. 667, 672.

82. *Pryor v. Webber*, supra note 17, paragraph two of the syllabus.

83. Id.

84. *Acuar*, supra, 260 Va. at 192, 531 S.E.2d 316.

However, the injured party should be made whole by the tortfeasor, not by a combination of compensation from the tortfeasor and collateral sources. The wrongdoer cannot reap the benefit of a contract for which the wrongdoer paid no compensation." [85]

{¶ 82} As the dissent in *Moorhead* stated, "While it is true that an injured party cannot recover twice for one injury, under the collateral source rule, the tortfeasor is required to pay for all the harm he causes, even if this creates a double compensation for part of the plaintiff's injuries. * * * Moreover, the principle behind the collateral source rule, that it is better for the wronged plaintiff to receive a windfall than for the tortfeasor to pay less than the damages he owes, specifically refutes the majority's contention." [86]

## VII. Conclusion

{¶ 83} We agree with those jurisdictions—a large majority—that have held that a plaintiff's recovery of the reasonable value of her medical treatment is not limited to the amount paid by her insurance. Under the public-policy purposes of the collateral-source rule, defendants should be liable for the full amount of damages caused by their wrongdoing, independent of the financial situation of their victims. We conclude that the collateral-source rule applies to any written-off amount agreed to by a plaintiff's health-care provider and insurer.

{¶ 84} The undiscounted medical bills should also be admitted because they are some evidence of the severity of the plaintiff's injuries. In this case, the difference is not great, but in some it could be humongous—the write-down could be substantial. An insured person would then be seen as less injured than an uninsured. We think they bleed the same.

{¶ 85} Applying this conclusion to the present case, we hold that Robinson is entitled to seek recovery for the entire amount of her medical bills, not just the amount paid by her insurance company. Therefore, the trial court erred when it did not allow Robinson to introduce her medical bills into evidence.

{¶ 86} We sustain Robinson's first and second assignments of error, reverse the trial court's judgment, and remand this case for further proceedings in accordance with this decision.

Judgment reversed
and cause remanded.

DOAN, P.J., and SUNDERMANN, J., concur.

---

85. Id.

86. 564 Pa. at 171, 765 A.2d 786 (Nigro, J., dissenting), citing Restatement of the Law 2d, Torts (1979), Section 920A, Comment *b*.