James BUTLER, Personal Representative of the Estate of Nondis Jane Butler, Deceased, Appellant–Plaintiff,

v.

INDIANA DEPARTMENT OF INSURANCE, Administrator of the Patient Compensation Fund, and Clarian Health Partners, Inc., Appellees–Defendants.

No. 49A05–0612–CV–742.

Court of Appeals of Indiana.

Oct. 22, 2007.

236

James H. Young, Young & Young, Indianapolis, IN, Attorney for Appellant.

A. Richard M. Blaiklock, Stephanie L. Cassman, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

BAKER, Chief Judge.

Appellant-plaintiff James Butler, as the personal representative of the Estate of Nondis Jane Butler (the Estate), appeals from the trial court's judgment in favor of appellees-defendants Indiana Department of Insurance, as the administrator of the Patient Compensation Fund, and Clarian Health Partners, Inc. (Clarian) (collectively, the Fund). Specifically, the Estate argues that (1) the trial court erroneously admitted evidence regarding payments and benefits from Medicare and Medicaid

in violation of the collateral source rule,[1] and (2) the trial court erred by denying the Estate's request to recover Nondis's unpaid medical expenses pursuant to the Indiana Adult Wrongful Death Statute[2] (AWDS).

We conclude that the trial court properly admitted evidence regarding the medical provider write-offs involving Medicare and Medicaid and any error resulting from the admission of the Medicare and Medicaid payments was harmless. We also conclude that, as a matter of law, the Estate was only entitled to recover the amount of actual pecuniary loss incurred as a result of Nondis's medical expenses; therefore, the trial court properly denied its claim for additional compensation, and we affirm the judgment of the trial court.

## FACTS

Nondis was born on September 7, 1968. On October 12, 2004, she filed a proposed complaint with the Department of Insurance against Clarian and various medical practitioners, alleging medical negligence. Specifically, Nondis alleged that the defendants failed to recognize, diagnose, treat and/or inform Nondis that she had several masses in her abdomen that were ultimately diagnosed as metastatic mucinous adenocarcinoma of the cervix. The complaint further alleged that as a result of this negligence, Nondis incurred medical expenses, suffered emotional distress, and endured various surgical procedures, including a total hysterectomy. Nondis died on September 18, 2005, at the age of thirty-seven.

Nondis's medical bills totaled $410,062.46 and both parties agree that the medical services she received were necessary and reasonable. While Nondis's medical bills totaled $410,062.46, only $122,161.18 was actually paid to the medical providers—the Estate paid $25,979.75, Nondis's insurance provider paid $9,971.73, Medicare paid $85,313.78, and Medicaid paid $895.92. The medical providers wrote off the unpaid amounts, totaling $287,901.28.

After her death, Nondis's claim was converted to a wrongful death action. The Estate settled with Clarian for $250,000 on January 4, 2006, and on December 27, 2005, the Estate filed a petition with the Fund, seeking additional compensation pursuant to Indiana Code section 34–18–15–3.[3] Specifically, the Estate sought reasonable medical and funeral expenses and damages for the emotional loss that Mahalia Butler suffered as a result of her daughter's death.

On April 19, 2006, the Fund filed a motion for partial summary judgment, arguing that pursuant to the AWDS, the Estate was only entitled to recover damages for "an amount equal to the expenses it has *actually incurred* for medical services rendered to the decedent, and that it is not entitled to recover an amount equal to the amount of medical bills it has received, but that have not been paid." Appellant's App. p. 28 (emphasis in original). On May 12, 2006, the Estate filed a response, including a cross-motion for summary judgment, arguing that pursuant to Indiana Code section 34–23–1–2, an estate can recover "[r]easonable medical, hospital, funeral, and burial expenses...." In its motion, the Estate argued it should be allowed to recover the amount of medical

1. Ind.Code § 34–44–1–2.

2. Ind.Code § 34–23–1–2.

3. Indiana Code section 34–18–15–3 details the procedure for seeking additional compensation from the Fund if a claimant has settled with a health care provider or its insurer for $250,000.

expenses actually billed for Nondis's medical care, not merely the amount that was actually paid. Additionally, the Estate filed a motion to preclude or strike evidence of payments and benefits that Medicare and Medicaid made and received on behalf of the Estate, arguing that this evidence was inadmissible pursuant to the collateral source rule.

On June 19, 2006, the Estate and the Fund reached a partial settlement agreement, which provided that the Fund would pay the Estate $188,046.88 "in *partial* settlement of [the Estate's] claim for excess damages against the [Fund]." Appellant's App. p. 63 (emphasis in original). The Fund also agreed to pay Nondis's mother the "maximum amount recoverable" for her loss of love and companionship. *Id.* at 9. The settlement agreement released the Fund from all of the Estate's claims, "except for any claims for additional medical expenses that were not paid but were billed to the [Estate]" and provided that the only remaining issue for trial was the amount of "reasonable medical and hospital expenses ... over and above, if any, the amount agreed upon and paid herein." *Id.* at 64.

A bench trial was held on May 18, 2006. On July 27, 2006, the trial court denied the Estate's motion to preclude evidence and entered judgment in favor of the Fund, finding that the Estate was not entitled to recover $287,901.28 that the medical providers had written off. The Estate filed a motion to correct error on August 22, 2006, arguing that the trial court erred by denying the Estate's motion to preclude evidence and that this error was prejudicial. The trial court held a hearing on November 20, 2006, and denied the Estate's motion on December 15, 2006. The Estate now appeals.

## DISCUSSION AND DECISION

The Medical Malpractice Act (MMA) allows a "patient or the representative of a patient" to bring a malpractice claim "for bodily injury or death." *Goleski v. Fritz*, 768 N.E.2d 889, 891 (Ind.2002) (citing Ind.Code § 34–18–8–1). The MMA was designed to curtail liability for medical malpractice. *Chamberlain v. Walpole*, 822 N.E.2d 959, 963 (Ind.2005). It does not create substantive rights or new causes of action and, instead, "merely requires that claims for medical malpractice that are otherwise recognized under tort law and applicable statutes be pursued through the procedures of the MMA." *Id.* The MMA provides that for an act of malpractice occurring after June 30, 1999, the total amount recoverable for an injury or death of a patient may not exceed $1,250,000. I.C. § 34–18–14–3. A qualified healthcare provider is liable for the initial $250,000 of damages, and the remainder of the judgment or settlement amount shall be paid from the Fund. *Id.*

Here, the applicable provision of the wrongful death statute is the AWDS because Nondis died as an adult without any dependents. I.C. § 34–23–1–2(a). The AWDS allows a plaintiff to recover "reasonable medical ... expenses necessitated by a wrongful act or omission that caused the adult person's death." I.C. § 34–23–1–2(c)(3)(A).

The parties agree that Nondis's medical bills totaled $410,062.46 and that the Estate, Medicare, Medicaid, and Nondis's insurance provider paid $122,161.18 after the medical providers agreed to accept a reduced amount. Appellant's App. p. 60–61. Thus, the medical providers wrote off $287,901.28 from the total amount of medical expenses billed for Nondis's care. The only issue at trial was whether the Estate was entitled to recover the amount that had been written off. While the trial court

determined that the Estate was not entitled to such recovery, the Estate argues on appeal that the total amount of Nondis's medical bills represents the reasonable value of the medical services and, therefore, the Estate is entitled to full recovery.

## I. Evidence at Trial

The Estate first argues that the trial court erred by admitting evidence of payments and write-offs involving Medicare and Medicaid. Specifically, the Estate argues that this evidence should have been excluded because it contravenes Indiana's collateral source rule.

■■■ We review an issue regarding the admissibility of evidence for an abuse of discretion. *Walker v. Cuppett*, 808 N.E.2d 85, 92 (Ind.Ct.App.2004). An abuse of discretion occurs if the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Even if a trial court errs in ruling on the admissibility of evidence, we will only reverse if that error is inconsistent with substantial justice. *Id.*

■■■ The collateral source rule is codified at Indiana Code sections 34–44–1–1 to –3. We have previously summarized the interaction between the statutory collateral source rule and its common law counterpart:

> Until recently, Indiana recognized the common law collateral source rule which prohibited defendants from introducing evidence of compensation received by plaintiffs from collateral sources, i.e., sources other than the defendant, to reduce damage awards. *Shirley v. Russell*, 663 N.E.2d 532, 534 (Ind.1996). As a result, there could be no abatement of damages when partial compensation was received for an injury from a collateral source independent of the one responsi-

ble for the loss, and thus, tortfeasors were held fully accountable for the consequences of their conduct.

However, our legislature abrogated the common law collateral source rule when, in 1986, it enacted the statute implicated by this case. The purpose of this new collateral source rule statute is to determine the actual amount of the prevailing party's pecuniary loss and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or a wrongful death action. I.C. § 34–44–1–1. In fact, the new statute abrogated both the substance and the procedure of the common law collateral source rule. Substantively, instead of tortfeasors being held fully accountable for their conduct, now victims may not recover more than once for each item of loss sustained. I.C. § 34–44–1–1(2). Procedurally, instead of evidence of collateral source payments being prohibited, now evidence of collateral source payments may not be excluded except for the specified statutory exceptions. In particular, Indiana Code section 34–44–1–2 provides, in pertinent part, that:

> in a personal injury or wrongful death action, the court shall allow the admission into evidence of:
>
> (1) proof of collateral source payments other than:
>
> (A) payments of life insurance or other death benefits;
>
> (B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or
>
> (C) payments made by:
>
> (i) the state or the United States; or
>
> (ii) any agency, instrumentality, or subdivision of the state or the United States;

that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought.

Evidence of these amounts shall be considered by the trier-of-fact in arriving at the amount of any award and shall be considered by the trial court in reviewing awards that are alleged to be excessive. I.C. § 34–44–1–3.

*Pendleton v. Aguilar*, 827 N.E.2d 614, 620 (Ind.Ct.App.2005), trans. denied. "The three categories of collateral sources that are excluded by Indiana Code section 34–44–1–2(1)(A), (B), and (C) share the characteristic that the collateral source benefit has been, in a sense, paid for by the plaintiff or the plaintiff's family, either through premiums or taxes." *Knowles v. Murray*, 712 N.E.2d 1, 3 (Ind.Ct.App.1999).

After evaluating the parties' arguments, the trial court found:

30. Cases from other jurisdictions have considered the issue of whether evidence of write-downs by Medicare/Medicaid/Insurers is inadmissible under their collateral source laws. Most of the cases favoring [the Estate's] position in this case rely on the conclusion that it is better to give a windfall to the innocent plaintiff than to give the windfall to the wrongdoing defendant. [ ] That public policy does not apply to this case, because although the [Fund] is the defendant, it was not the tortfeasor. Clarian Health Partners, Inc., paid the maximum amount it could be legally liable for ($250,000) to gain access to recovery against the [Fund].

31. Under the facts of this case, the Court finds persuasive those cases from other jurisdictions that have held that evidence of write-down amounts is admissible, and that *the collateral source rule does not apply.*

\* \* \*

36. For the reasons stated above, the Court rules as a matter of law that the [Estate] is not entitled to recover $287,901.28 for medical bills that have been received by the [Estate but not actually paid].

Appellant's App. p. 13 (emphasis added) (citations omitted).

■ We will first address the Estate's claim that the trial court erred by admitting evidence of medical provider write-offs involving Medicare and Medicaid. According to the plain language of the statute codifying the collateral source rule, the rule applies to evidence regarding "collateral source *payments*." I.C. § 34–44–1–2 (emphasis added). However, a write-off is not a payment because money is not delivered to the creditor. *Compare Black's Law Dictionary* 1641 (8th ed.2004) (defining the verb "write off" as "to remove (an asset) from the books, especially as a loss or expense"), with id. at 1165 (defining "payment" as the "performance of an obligation by the delivery of money or some other valuable"). In light of our conclusion that a write-off is not a payment pursuant to Indiana Code section 34–44–1–2, the collateral source rule does not apply to the medical provider write-offs involving Medicare and Medicaid, and the Estate's argument fails.[4]

---

4. We recognize that there is a national split of authority regarding medical write-offs and the applicability of the collateral source rule. *See Dyet v. McKinley*, 139 Idaho 526, 81 P.3d 1236, 1239 (2003) (holding that a Medicare write-off is "not technically a collateral source"); *Moorhead v. Crozer Chester Med. Ctr.*, 564 Pa. 156, 765 A.2d 786, 791 (2001) (holding that the collateral source rule does not apply to a medical expense write-off because it is an "illusory charge" that was "not paid by any collateral source"); *Bates v.*

■ The Estate also argues that evidence regarding payments that Medicare and Medicaid made on behalf of the Estate should not have been admitted at trial. Specifically, the Estate argues that because Medicare and Medicaid are agencies of the United States, the collateral source rule renders evidence of the agencies' payments inadmissible. *See* I.C. § 34–44–1–2(1)(C)(ii) (rendering evidence of payments made by a United States agency in a wrongful death action inadmissible). Even assuming for the sake of the argument that the trial court improperly admitted evidence of the Medicare and Medicaid payments at trial, we have already concluded that evidence of the medical provider write-offs involving Medicare and Medicaid was properly admitted. Therefore, even without direct evidence of the payment amounts, a simple calculation [5] would have revealed that Medicare and Medicaid paid $86,209.70 on behalf of the Estate. Because we find the alleged evidentiary error to be harmless, the Estate's argument fails.

## II. Unpaid Medical Expenses

As noted above, the sole issue at trial was whether the Estate was entitled to recover $287,901.28 in medical expenses that had been written off by the medical providers. On appeal, the Estate challenges the trial court's conclusion that it was not entitled to such recovery. Specifically, the Estate argues that the AWDS allows a plaintiff to recover reasonable medical expenses and that the *billed* amount represents the reasonable value of Nondis's medical expenses. Thus, the Estate argues that the amount written off by the medical providers is inconsequential.

■ Whether the Estate is entitled to the requested recovery pursuant to the AWDS is a question of law that we review de novo. *Atterholt v. Robinson,* 872 N.E.2d 633, 638 (Ind.Ct.App.2007). Statutory interpretation is a question of law reserved for the courts, and we owe no deference to a trial court's legal conclusions. *Shepherd v. Carlin,* 813 N.E.2d 1200, 1203 (Ind.Ct.App.2004). The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id.*

An Indiana state court has never addressed the question of whether a plaintiff is entitled to recover the full amount billed for a decedent's medical treatment pursuant to the AWDS or whether the plaintiff may only recover the amount actually paid. However, other state and federal courts have addressed this issue and their decisions have created two distinct groups:

Numerous courts have determined that a plaintiff is entitled to recover the rea-

---

*Hogg,* 22 Kan.App.2d 702, 921 P.2d 249, 252–53 (1996) (holding that a Medicaid write-off is not recoverable because it is not a collateral source); but *see Papke v. Harbert,* 738 N.W.2d 510, 536 (S.D.2007) (holding that the collateral source rule applies to medical malpractice cases and defendants are "precluded from entering into evidence the amounts 'written off' by medical care providers"); *Robinson v. Bates,* 160 Ohio App.3d 668, 828 N.E.2d 657, 673 (2005) (holding that the collateral source rule applies to write-offs). However, as more fully explained later in this opinion, the majority of courts with collateral source rule statutes abrogating the common law rule, as

Indiana's statute does, arrive at the conclusion we reach herein.

**5.** The Estate does not challenge evidence regarding the total amount of medical expense payments made by the Estate or Nondis's insurer. Because we have already held that evidence regarding the $287,901.28 medical provider write-offs involving Medicare and Medicaid was admissible, the trial court could have subtracted that amount and the $35,951.48 paid by the Estate and Nondis's insurer from $410,062.46 to discover that Medicare and Medicaid paid $86,209.70.

sonable value of the medical services rendered regardless of the amount paid by the plaintiff's insurance. Supporting this conclusion is the collateral-source rule. Under the collateral-source rule, a plaintiff's recovery cannot be reduced by payments or benefits from other sources. The collateral-source rule prevents any payments made on the plaintiff's behalf or gratuitous benefits received by the plaintiff from benefiting a defendant-tortfeasor. The rule is grounded in the long-standing policy decision that should a windfall arise because of an outside payment, the party to profit from that collateral source is the person who has been injured, not the one whose wrongful acts caused the injury. The practical effect of the collateral-source rule is that the jury is prevented from learning anything about the collateral income so that it will not influence its determination of damages. In the context of medical-expense damages, the collateral-source rule allows plaintiffs to seek recovery of the reasonable value of medical services without consideration of payments made on their behalf by insurance.

\* \* \*

There are a number of courts that have held that a plaintiff's recovery should be limited to the amount actually paid by the plaintiff's insurance. But most of those courts have been influenced by state statutory limitations or abrogations of the [common law] collateral-source rule.

*Robinson,* 828 N.E.2d at 664, 669.[6]

After Indiana's statutory collateral source rule was enacted, our Supreme Court held that "our legislature abrogated the common law collateral source rule

when, in 1986, it enacted the [ ] statute." *Shirley,* 663 N.E.2d at 534. We have emphasized that "[t]he purpose of this new collateral source rule statute is to determine the *actual amount* of the prevailing party's pecuniary loss and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or a wrongful death action." *Pendleton,* 827 N.E.2d at 621 (emphasis added). Therefore, Indiana's collateral source rule, which abrogates the common law rule, supports the conclusion that pursuant to the AWDS, a plaintiff's recovery is limited to the amount of pecuniary loss sustained by the decedent's medical treatment, which is represented by the amount actually paid for the treatment, not the amount billed.

The language of the AWDS also supports this conclusion. While subsection (c)(3)(A) allows a plaintiff to recover reasonable medical expenses, subsection (d) states that "[d]amages awarded under subsection (c)(3)(A) for medical ... expenses inure to the exclusive benefit of the adult person's estate for the *payment* of the expenses." (Emphasis added). We interpret the legislature's use of the word "payment" in subsection (d) to limit a plaintiff's recovery for reasonable medical expenses to the amount actually paid for the decedent's treatment.

We note that a federal district court reached the same conclusion when interpreting the Indiana collateral source rule in the context of a personal injury action. *Brumfiel v. United States,* No. 1:03–cv–01598–JDT–TAB, 2005 WL 4889255, slip op. at 10 (S.D.Ind.2005). While we acknowledge that an unpublished decision by a federal district court does not constitute binding precedent upon our court, it may

---

**6.** The *Robinson* opinion contains a useful nine-page summary of the multitude of state

and federal opinions that address the issue we decide today. 828 N.E.2d at 664–673.

be worth mentioning where, as here, there is a dearth of authority on point. *Wood v. Schuen,* 760 N.E.2d 651, 659 (Ind.Ct.App. 2001). While applying Indiana's collateral source rule, Judge John D. Tinder held that

> [t]he [Indiana] collateral source statute purports to limit double-recoveries and windfalls on the part of plaintiffs. Other states with statutes abrogating or replacing the common law rule have, in the context of Medicare and Medicaid payments, likewise "allow[ed] an injured party to receive compensation for medical expenses for which they have become liable, but [have not permitted] the plaintiff to receive a windfall by recovering 'phantom damages.'" ... Because [plaintiff] has presented no evidence that he was personally liable for the written-off amounts, or that they represent any actual pecuniary loss to him, he may not recover damages for these amounts. Thus, the court concludes that [plaintiff] should recover only the amount paid for his medical treatment.

*Brumfiel,* slip op. at 10 (citations omitted). We find Judge Tinder's logic to be persuasive and, for the reasons detailed above, agree with his interpretation of our collateral source rule.

In sum, we hold that, as a matter of law, a plaintiff seeking recovery for reasonable medical expenses pursuant to the AWDS is only entitled to recover the amount of actual pecuniary loss incurred as a result of the decedent's medical expenses. Applied to the facts of this case, the Estate was only entitled to recover $122,161.18 for Nondis's reasonable medical expenses because that amount represents the actual pecuniary loss sustained. The Estate is not entitled to recover $287,901.28 that the medical providers wrote off because that amount will never be paid. Thus, the trial court properly denied the Estate's claim for additional compensation.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.