Hinkle, Margaret R., J.
The plaintiff filed this medical malpractice action against defendant Maureen Martin, M.D., alleging negligence in her care and treatment of plaintiffs decedent, Brunei Sylvestre (“Sylvestre”). On September 24, 2007, a jury awarded the plaintiff damages including $260,122.25 in medical expenses. The defendant now seeks to alter or amend the judgment to reduce the medical expenses award by $250,625.70 under G.L.c. 231, §60G. For the reasons discussed below, after a hearing, the defendant’s motion is allowed.[2]
BACKGROUND
The defendant provided care and treatment to the plaintiffs brother, Sylvestre, during liver transplant surgery at Beth Israel Hospital (“BI”) in January of 2001. Sylvestre died on Januaiy 4, 2001 at the age of 34. The plaintiff then filed this medical malpractice action against Dr. Martin. On September 24, 2007, the jury returned a verdict in favor of the plaintiff in the amount of $460,122.25, including $100,000 in damages to Theresa Sylvestre, $100,000 in damages to Louis Sylvestre, and medical expenses of $260,122.25. The amount of $260,122.25 is supported by medical billing records of care and treatment provided to Sylvestre at BI between Januaiy 1 and January 4, 2001.
At all relevant times, Sylvestre was insured through the Medicaid program.[3] The MassHealth Casualty Recoveiy Unit paid Beth Israel $9,496.55 in full and final satisfaction of its bill for $260,122.25 and claims a lien in that amount for the Medicaid benefits paid on behalf of Sylvestre. Final judgment entered in favor of the plaintiff in the amount of $460,122.25 plus statutory interest on October 1, 2007.
DISCUSSION
Massachusetts Rule of Civil Procedure 59(e) provides that “[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.” Rule 59(e) encompasses relief in the nature of a motion for reconsideration which seeks substantive alterations in the judgment. Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm’n, 394 Mass. 233, 235 (1985); Gagnon v. Fontaine, 36 Mass.App.Ct. 393, 401 (1994). A motion to alter or amend the judgment provides an avenue for challenging a decision which is erroneous because it lacks legal or factual justification. Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm’n, 394 Mass. at 237; Page v. New England Tel. & Tel. Co., 383 Mass. 250, 252 (1981). A motion under Rule 59(e) is addressed to the judge’s sound discretion. R.W. Granger & Sons. Inc. v. J&S Insulation, Inc., 435 Mass. 66, 79 (2001).
*409 The defendant contends that, as a matter of law, the medical expenses portion of the damages award must be reduced under G.L.c. 231, §60G, a statutory exception to the collateral source rule.
Traditionally, under the collateral source rule, the plaintiffs receipt of other compensation for injury, whether from an insurance policy, workers’ compensation or other sources, does not lawfully reduce the damages recoverable from the tortfeasor. Corsetti v. Stone Co., 396 Mass. 1, 17 (1985); Savers Prop. & Cas. Ins. Co. v. Admiral Ins. Agency, Inc., 61 Mass.App.Ct. 158, 165, rev. den., 442 Mass. 1105 (2004).[4] The rationale for this rule is that a tortfeasor has an obligation to make good for all the damage it caused, and although failure to deduct collateral source benefits may produce a windfall, any windfall should accrue to the injured party rather than the wrongdoer. Jones v. Wayland, 374 Mass. 249, 262 (1978); Buckley Nursing Home, Inc. v. MCAD, 20 Mass.App.Ct. 172, 184, rev. den., 395 Mass. 1103 (1985).
However, the Legislature has largely abolished the collateral source rule in medical malpractice cases. General Laws Chapter 231, Section 60G provides in relevant part:
(a) In every action for malpractice, negligence, error, omission, mistake, or the unauthorized rendering of professional services against a provider of health care in which the plaintiff seeks to recover for the costs of medical care... if the jury returns a verdict specifying the type and amount of such damages ... on motion by a defendant or upon its own motion, the court shall hear evidence of any amount of such damages incurred prior to the judgment which the defendant or defendants claim was replaced, compensated or indemnified pursuant to the United States Social Security Act, any state or federal income-disability act, any health, sickness or income-disability insurance, any accident insurance that provides health benefits or income disability coverage, any contract or agreement of any group, organization, partnership, or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services, any contract or agreement to continue to pay, in whole or in part, the plaintiffs wages or income, or any other collateral source of benefits whatsoever . . .
(b) If the court finds that any such cost or expense was replaced, compensated, or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums or other amounts paid by the plaintiff for such benefits for the one-year period immediately preceding the accrual of such action.
(c)... no entity which is the source of the collateral benefits by which the court has reduced the award to the plaintiff hereunder shall recover any amount against the plaintiff, nor shall it be subrogated to the rights of the plaintiff against the defendant, nor shall it have a lien against the plaintiffs judgment, on account of its payment of the benefits by which the court has reduced the amount of the plaintiffs judgment; provided that, if the plaintiff has received compensation or indemnification from any collateral source whose right of subrogation is based in any federal law, the court shall not reduce the award by the amounts received prior to judgment from such collateral source and such amounts may be recovered in accordance with such federal law.
The purpose of this statute is to prevent double recovery by a medical malpractice plaintiff while also protecting the plaintiff from double loss of benefits. Harlow v. Chin, 405 Mass. 697, 710 (1989).
Medicaid payments fall within the §60G(c) reduction exemption because the Commonwealth’s pursuit of reimbursement is required by federal law. Id. at 711. Thus, the defendant does not dispute that the $9,496.55 paid by MassHealth cannot be deducted from the juiy award. She argues, however, that the remainder of the $260,122.25 hospital bill must be deducted under §60G to avoid a windfall to the plaintiff because that amount was simply absorbed by Beth Israel Hospital which cannot recoup it from Sylvestre or his family. The plaintiff contends that because the entire $260,122.25 bill was fully satisfied by MassHealth’s payment of $9,496.55 to Beth Israel, Sylvestre received a collateral source benefit in the amount of $260,122.25 which involves subrogation based in federal law and thus cannot be deducted under §60G. The plaintiff argues that allowing the defendant to reduce the verdict by the difference between BI’s charges and MassHealth’s payment in full satisfaction of those charges (“the write-off amount”) would in effect “balance bill” the plaintiffs decedent in violation of federal and state law.[5]
Medicaid’s implementing regulations provide in relevant part:
Acceptance of State payment as payment in full.
A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual.
42 Code Fed. Regs. §447.15.
In addition, MassHealth’s Administrative and Billing Regulations provide in relevant part:
450.203: Payment in Full
(A) Federal and state laws require that participation in MassHealth be limited to providers who agree to accept, as payment in full, the amounts paid in accordance with the applicable fees and rates or amounts established under a provider contract or regulations applicable to MassHealth payment (see 42 CFR 447.15; M.G.L.c. 118E, §36, and M.G.L.c. 118G, §7). No provider may solicit, charge, receive, *410 or accept any money, gift, or other consideration from a member, or from any other person, for any item or medical service for which payment is available under MassHealth, in addition to, instead of, or as an advance or deposit against the amounts paid or payable by the MassHealth agency for such item or service, except to the extent that the Mass-Health regulations specifically require or permit contribution or supplementation by the member or by a health insurer.
130 Code Mass. Regs. §450.203(A).
The Medicaid statute and regulations pertaining to payment in full prohibit a health care provider from attempting to recover the write-off amount from the Medicaid beneficiary or his family. Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust, 410 F.3d 304, 318 (6th Cir. 2005). This Court is not persuaded that reducing a tortfeasor’s liability by the write-off amount constitutes balance billing in violation of the above-cited regulations because such a reduction does not require the plaintiff to pay or expend any resources toward the cost of the services provided. Cf. Rose v. Via Christi Health System, Inc., 113 P.3d 241, 244-47 (Kan. 2005) (court’s adjusting verdict against tortfeasor to offset Medicare write-off amount where tortfeasor was also the Medicare provider did not violate Medicare limiting charge statute because allowing tortfeasor a credit for write-off did not constitute a patient “charge” within meaning of statutory prohibition).
In this Court’s view, the critical issue is whether the write-off amount under the MassHealth program constitutes an amount received prior to judgment from a collateral source whose right of subrogation is based upon any federal law within the meaning of §60G(c). The plaintiff emphasizes that numerous jurisdictions which have considered the write-off issue have concluded under a common-law analysis that a Medicaid or Medicare write-off falls within the collateral source rule and should not be deducted from a plaintiffs damages award. See, e.g., Bynum v. Magno, 101 P.3d 1149, 1157 (Haw. 2004); Baptist Healthcare Systems, Inc. v. Miller, 177 S.W.3d 676, 683-84 (Ky. 2005); Wal-Mart Stores, Inc. v. Frierson, 818 So.2d 1135, 1139-40 (Miss. 2002); Papke v. Harbert, 738 N.W.2d 510, 536 (S.D. 2007). These courts have reasoned that the write-off amount is akin to a gratuitous payment or gift to the plaintiff which under the common-law collateral source rule does not reduce a tortfeasor’s damages. See Bynum v. Magno, 101 P.3d at 1156-57. Thus, any windfall created by the write-off amount belongs to the plaintiff, not the tortfeasor. Baptist Healthcare Systems, Inc. v. Miller, 177 S.W.3d at 684; Papke v. Harbert, 738 N.W.2d at 536. As the Kentucky Supreme Court stated: “it is absurd to suggest that the tortfeasor should receive a benefit from a contractual arrangement between Medicare and the health care provider.” Baptist Healthcare Systems, Inc. v. Miller, 177 S.W.3d at 683.[6]
However, other courts have concluded under a common-law analysis that the write-off amount does not fall within the collateral source rule and cannot be recovered by the plaintiff as an element of damages. These courts have emphasized that the plaintiff did not incur the write-off amount and was never legally liable for it, and Medicaid never made any actual payment of that amount. Thus, the analysis in these cases goes, the compensatory purpose of tort damages would not be served by allowing the plaintiff to recover a non-existent or illusory expense which was never paid by any collateral source. See, e.g., Hanif v. Housing Auth. of Yolo County, 200 Cal.App.3d 635, 643-44 (Cal.App. 1988); Bates v. Hogg, 921 P.2d 249, 252-53 (Kan. 1996); Suhor v. Lagasse, 770 So.2d 422, 426-27 (La.App. 2000); Moorhead v. Crozer Chester Med. Centr., 765 A.2d 786, 789-91 (Pa. 2001). Cf. Bozeman v. State, 879 So.2d 692, 704-06 (La. 2004) (reasoning that purpose of collateral source rule with respect to insurance is that plaintiff is entitled to benefit of bargain made with insurer, and defendant should not be allowed to avoid payment of full compensation because victim had foresight to provide himself with insurance, but this rule does not apply to Medicaid insurance because victim paid no consideration for benefits and should not be permitted to pocket windfall of write-off amount).
These competing lines of cases offer little assistance in the task facing this Court, which is to determine the proper treatment of a Medicaid write-off under a specific statute relating to collateral benefits. That statute, G.L.c. 231, Section 60G(c), provides: “if the plaintiff has received compensation or indemnification from any collateral source whose right of subrogation is based in any federal law, the court shall not reduce the award by the amounts received prior to judgment from such collateral source and such amounts may be recovered in accordance with such federal law.” (Emphasis added.)
The plaintiff argues that the Legislature clearly stated that the court “shall not” deduct collateral source benefits with a federal right of subrogation such as Medicaid benefits, and for purposes of the statute Medicaid benefits should include any write-off amount. The plaintiff contends that because §60G is in derogation of the common-law collateral source rule, this Court must construe it narrowly. See Kerins v. Lima, 425 Mass. 108, 111 (1997). Therefore, plaintiff argues, because the Legislature did not expressly state that a Medicaid write-off should reduce a medical malpractice award, this Court cannot construe §60G to permit deduction of the write-off amount.
Despite any general rule of narrow construction, interpretation of a statute adopted to modify the common law should advance rather than defeat the purpose of the Legislature. Falmouth Ob-Gyn Assoc., Inc. *411 v. Abisla, 417 Mass. 176, 179 (1994); Hayon v. Coca Cola Bottling Co. of New England, 375 Mass. 644, 648-49 (1978). Thus, this Court concludes that although paid Medicaid benefits are a collateral source whose right of subrogation is based in federal law, a Medicaid write-off is not an amount received by the plaintiff from a collateral source for purposes of §60G(c) and therefore may be deducted from a damages award.
In Cooperative Leasing, Inc. v. Johnson, 872 So.2d 956 (Fla. App. 2 Dist. 2004), the court interpreted a statute which modified the common law collateral source rule by requiring a reduction in damages for any amount paid from all collateral sources for which no right of subrogation exists. The statute stated:
Notwithstanding any other provision of this section, benefits received under Medicare, or any other federal program providing for a Federal Government lien on or right of reimbursement from the plaintiff s recovery, the Workers’ Compensation Law, the Medicaid program of Title XIX of the Social Security Act or from any medical services program administered by the Department of Health and Rehabilitative Services shall not be considered a collateral source.
Id. at 959-60 (emphasis added). The Florida court concluded that although Medicare payments actually made on behalf of a plaintiff could not be deducted under this statute, any Medicare write-off amount was not a proper element of damages and could be deducted because the write-off amount was not a “benefit received.” Id. at 960. The court reasoned that treating the write-off as a benefit received would permit the plaintiff to “recover an amount equal to the full amount of her medical bills, including the amount for which she never became liable and for which the federal government has no right to reimbursement. This would result in a windfall that is contrary to the legislative policy evidenced by [the statute].” Id.
Other jurisdictions with statutory modifications of the collateral source rule have reached similar results, reasoning that such statutes are designed to prevent double recovery and avoid windfalls to plaintiffs. See, e.g., Dyet v. McKinley, 81 P.3d 1236, 1239 (Idaho 2003) (under state statute requiring damage award to be reduced by amounts received from collateral sources, but excluding benefits paid under federal programs which by law must seek subrogation, Medicare payments properly treated as collateral source, but Medicare write-off is not collateral source, is admissible in evidence, and may be deducted from damages); Butler v. Indiana Dept. of Ins., 875 N.E.2d 235, 239-42 (Ind. 2007) (under state statute allowing jury to consider evidence of collateral source payments except payments by the state or the United States, evidence of Medicaid write-off admissible because write-off was not a “payment” to the plaintiff, and legislative intent in enacting modification of collateral source rule was to limit plaintiffs recovery to actual pecuniary loss). But see Lindholm v. Hassan, 369 F.Sup.2d 1104, 1108-09 (D.S.D. 2005) (under collateral source statute allowing evidence of insurance payments with no right of subrogation, Medicare write-off not admissible because plaintiff entitled to recover reasonable value of medical services without regard to whether part of cost was written off by operation of law).
This Court interprets G.L.c. 231, §60G to require a similar result. Section 60G is part of the Medical Malpractice Act, a comprehensive set of reforms enacted in 1986 to avert a perceived crisis in the medical profession relating to the burgeoning cost of medical malpractice insurance and litigation. Darviris v. Petros, 442 Mass. 274, 282 (2004); McGuiggan v. New England Tel. & Tel. Co., 398 Mass. 152, 163 (1986) (Lynch, J., concurring). See also Criminal Report of the Special Comm’n Relative to Med. Professional Liab. Ins. and the Nature and consequences of Med. Malpractice 1987, House Doc. No. 5262; George Jacobs & Kenneth Laurence, Professional Malpractice §11.1, at 179 (2007). The legislative intent in enacting §60G was to prevent double recovery by plaintiffs in medical malpractice actions. Harlow v. Chin, 405 Mass. at 710. Although G.L.c. 231, §60G(c) excludes from the collateral source reduction “the amounts received prior to judgment from [a federally subrogated] collateral source,” neither the plaintiff, her decedent nor Beth Israel ever received the write-off amount from Mass. Health. Rather, the Medicaid write-off is an amount which was extinguished by operation of federal law and was neither paid out nor received by any entity. In this Court’s view, the interpretation urged by the plaintiff, i.e., exempting the write-off amount from the collateral source damage reduction, does not further the legislative purpose of preventing excessive medical malpractice awards.
In enacting §60G, the Legislature also intended to protect plaintiffs from a double loss of benefits by cancelling the rights of subrogation and lien perfection previously held by entities providing collateral benefits. Id. Because the Legislature was unable to effect such a cancellation with respect to entities whose subrogation rights are mandated under federal law, it exempted such collateral benefits from the statute. The concern about double loss of benefits is not implicated by the Medicaid write-off amount because the plaintiff can never be charged with that amount and the government has no right of subrogation against the plaintiff for that amount. See G.L.c. 18, §5G; G.L.c. 118E, §22 (Commonwealth has right of subrogation only to extent of assistance actually provided Medicare beneficiary). Allowing deduction of the write-off amount serves the legislative purpose of preventing a windfall to plaintiffs in medical malpractice actions.
*412 Finally, plaintiffs damages were awarded under §60F(a) (1), which permits a medical malpractice plaintiff to recover:
Amounts intended to compensate the plaintiff for reasonable expenses which have been incurred, or which will be incurred, for necessary medical, surgical, X-ray, dental or rehabilitative services, including prosthetic devices; necessary ambulance, hospital and nursing services; drugs; and therapy;
G.L.c. 231, §60F(a)(l) (emphasis added). Neither the plaintiff nor her decedent has incurred or ever will incur the expense of the Medicaid write-off. Accordingly, the write-off amount is not a proper element of damages in a malpractice action. See Annual Report of the Special Comm’n Relative to Med. Professional Liab. Ins. and the Nature and Consequences of Med. Malpractice, 1987 House Doc. No. 5262 (noting that itemization of damages provision of statute is intended to bring damages awards more inline with actual losses). Cf. Daniels v. Celeste, 303 Mass. 148, 150 (1939) (in personal injury action, reasonable value of medical services recoverable as damages only if plaintiff paid for such services or incurred liability now or in future to pay for them).
Accordingly, this Court concludes that under G.L.c. 231, §60G, the plaintiffs jury verdict properly may be reduced by the $250,625.70 Medicaid write-off.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to alter or amend the judgment is ALLOWED. It is further ORDERED that the October 1, 2007 final judgment in favor of plaintiff Vignoble Sylvestre against defendant Maureen Martin is reduced to the sum of $209,496.55 plus statutory interest.

The defendant initially requested limited postjudgment discovery in connection with her motion to alter or amend. However, she waived her discovery request during oral argument on the motion.

Medicaid is a medical insurance program for low-income individuals which is jointly funded by the federal and state governments but administered by the individual states. See 42 U.S.C. §1396 et seq. MassHealth is the program through which the Commonwealth administers Medicaid benefits. See G.L.c. 118E, §§9, 9A.

Evidence of collateral source income is ordinarily excluded at trial because although receipt of such income does not reduce the defendant’s liability, jurors may be led by the irrelevancy to consider the plaintiffs claim unimportant or trivial, or to reduce or refirse a verdict for the plaintiff, believing that otherwise an unjust recovery would result. Corsetti v. Stone Co., 396 Mass. at 17.

Generally, “balance billing” refers to the practice of charging the insured any difference between the medical provider's charge and the rate paid by the insurer to the provider. See Kartell v. Blue Shield of Mass., Inc., 384 Mass. 409, 416 (1981).

Numerous courts have reached the same conclusion with respect to write-offs under private insurance policies. See, e.g., Lopez v. Safeway Stores, Inc., 129 P.3d 487, 496 (Ariz. 2006) (write-off under private insurance policy falls within collateral source rule and does not reduce defendant’s liability for damages); Mitchell v. Haldar, 883 A.2d 32, 40 (Del.Super. 2005) (same); Olariv v. Marrero, 549 S.E.2d 121, 123 (Ga.App. 2001) (same); Arthur v. Catour, 803 N.E.2d 647, 651 (Ill.App. 2004), aff'd, 833 N.E.2d 847 (Ill. 2005) (same); Griffin v. Louisiana Sheriff's Auto Risk Ass’n, 802 So.2d 691, 715 (La.App. 2001) (same); Robinson v. Bates, 828 N.E.2d 657, 673 (Ohio App. 2005) (same).